This is 4090643, People of the State of Illinois v. Shanklin. For the appellate, Mr. Morris. For the appellee, Ms. Johnson. You may proceed. Morris Good afternoon, appellate court. This case involves, actually started out as a criminal case in 2001 in the Plain County where my client was charged with offenses relating to cruelty of animals and she was convicted of that. The case went up on appeal a number of times, but the issue before the court today is regarding the animals that were seized by the court and held by the court's order, which is still in effect, which my client was asking the court to resolve. And the court ruled last year that the court had no jurisdiction as to the animals seized and were under court order, the animals that were seized for which my client was not charged, namely cats, the animals for which my client was found not guilty of, and including the animals that my client was found guilty of. The court ruled that there was no jurisdictional power for the court to do anything with animals even though the court had resolved the judgment. It's the feeling of the plaintiff in this case that the court still retained jurisdiction because the order regarding animals of May 23, 2001 said nothing was to be done with these animals or those that related to the case until further order of this court. Do we even know where these animals are? We know where some of them are at. The state people know where they are because they took them and they have them in their possession and they refused to divulge at the hearing that we had. In fact, you said the burden was on us even though they controlled the animals. That's in the Bison's report. That was their argument that even though they have animals, we have to find them and bring that to the attention of the court. The animals that my client was found not guilty of or the ones that she was never charged with, we want them returned. Even as to the horses that my client was found guilty of, they only had an order for most of the horses, not all of them. So the court left that issue as to what to do with the animals unresolved and obviously they were last in control of the people of the state of Illinois and the McLean County Humane Society, which were the last persons that had them and obviously they didn't know where they went. In fact, the order says that no animal was to be adopted and it's clear, oh well, we were going to present evidence at the hearing that they adopted them out even though there was a court order preventing that, but we were not allowed to present any evidence. The court just ruled that they had no jurisdiction and refused to do anything further. So it's really a simple case of did the court have jurisdiction over this, I would call it an incidental matter after you rule upon an incubation, what do you do with the evidence? This was evidence. What do you do with the gun in a shooting case? You dispose of it in some way. Obviously the court has authority to either confiscate it, dispose of it, destroy it. This was really the live animals, obviously the court should do something with the evidence after the disposition and the court has ruled that the evidence is to be held by the state in which the state did hold and which the state obviously doesn't want to tell. But it's a very simple case and that's what it boils down to. Thank you. Ms. Juritsen. Good afternoon. May it please the court. The issue on appeal clearly is the jurisdictional authority of the trial court to hear the motion that was submitted. The motion was submitted six years after the final judgment and the sentence. It is the state's position that the motion that was submitted does in fact attack the judgment because part of that judgment was that this defendant was not to own or possess or care for any animals. In filing this motion, seeking the return of these animals and in their own brief identifying the defendant as the quote rightful owner of these animals, they are in the state's view attempting to modify the sentence that was imposed six years ago. I believe now ten years ago because this was the motion that was filed six years after the fact. And it's way past time for that to happen. The trial court apparently believed that as well. As I put in my brief, we don't have transcripts of several of the rather important hearings, but there was a bystanders report that was filed on Friday. I received it on Friday. And from that it indicated that the court attempted to find a jurisdictional authority for them to hear the motion. Determined that a 214-01 was not the proper authority and they are correct. A 214-01 would allow them to review this motion had it been filed within two years of the judgment. Again, we are past that point. The trial court properly determined it did not have the authority. As I stated in my brief, the horses that were impounded were disposed of properly through the administrative law judge through the Department of Agricultural Proceedings. There is nothing in the record to indicate that any appeal of that particular order was ever taken. Therefore, those horses have been disposed of and defendant's ownership rights in those have been terminated. Similarly, the animals that were not disposed of through the impoundment under the Department of Agriculture, which would have been the animals that were taken other than the horses. Those were continued to be held along with the animals that were taken from the search warrant. The state originally had filed a motion asking that the Humane Society be allowed to spay or neuter these animals. And in response, defense counsel, and I believe it was separate trial counsel at that time, was opposed to that motion, wanted them kept separate, did not want them adopted, spayed or neutered. I believe part of it had to do with they were, if successful in defending their position, that she would get them and that they would be used for possibly breeding. But then defense counsel is the one who actually drafted the motion that included not only spaying and neutering, but adopting them as well. The trial court did sign that order. And it did say that nothing should happen to the animals until further written notice of the court. When defendant was sentenced, a condition of that probation was, defendant shall not own or possess, care for any animals for the term of the probation. That is a written order of the court. Now, I agree that it could have been clear that that, by virtue of that, her inability to maintain ownership, there was a forfeiture of those animals. And that at that point, the previous order saying that they could not be adopted was being overruled and the ruling that was from this point forward was that they now could be adopted because clearly they couldn't be held indefinitely. So I acknowledge it could have been clear as to the actual disposition. But what is also clear is in the direct appeal, defendant acknowledged no future ownership of these animals. So to stand here now and argue that she is the rightful owner is contrary to what was argued on direct appeal. On direct appeal, a large portion of the arguments at sentencing had to do with the restitution and the amount of credit that should be applied to that restitution for the adoptions of the horses, the dogs, the cats. And there was also argument in defendant's brief on direct appeal that there should be an additional credit for the chickens, the donkey, the ram, and the goats. They argued on direct appeal that the offset should be at least $8,275. In making this argument, it's clear that they are accepting, acknowledging, admitting they have no future ownership right to these animals. And it is also in the record on direct appeal that something magical happened on July 15th of 2001. And I admit I cannot find out exactly what it was. It isn't in the docket entries. But at the sentencing hearings, again, there was conversation during this restitution that there should not be, and it was from defendant's side, that there should not be any restitution ordered past July 15th, 2001 for any of the animals seized or past the date of the adoption. The administrative law judges ordered finding that she violated the Humane Care for Animals Act and that the horses should not be returned to her, which happened in May. It appears that all parties mutually understood and worked toward and agreed that on July 15th there must have been some agreement that the animals that were still seized could be adopted out at that point. Because otherwise you would be arguing that restitution for the animals seized, not only the adoption fees, you wouldn't be arguing, excuse me, you would not be arguing that you should have a credit for adoption of animals that are seized if you expected to get them back. And you would not be arguing that you should not be charged for the Humane Care of these animals past July 15th if you believe that you had continuing ownership. Everybody operated, and this date of July 15th shows up twice, that something happened. And I admit it's not in the docket entries. I have attempted to contact the Assistant State's Attorney and find out what it is. But all parties operated that on that date they understood animals were adopted. And because of that, defendant argued they should not be charged with the care of those animals in the restitution figure beyond July 15th or the date of the ALJ's order. So from several different viewpoints, it's clear to the state that one, there wasn't jurisdiction to hear this, and two, that the defendant acknowledged this and recognized this in the direct appeal and that they should not be allowed to argue otherwise at this point. Are there any questions? Are we talking about all of the animals? Well, I put in my brief, I'm not exactly clear because the original order to preserve the animals that were seized only addressed those animals that were taken in December which were actually seized after the execution of the search warrant. That did not include certain horses. Then there was the second proceeding in January of 2001 where the animals were impounded by the Department of Agriculture. When the state filed the motion to preserve the animals that were seized, the trial court's order ended up addressing all the animals, the animals that the Department of Agriculture had and the animals that had been seized. The state filed a motion to reconsider saying you don't have jurisdiction over the animals that have been impounded by the Department of Agriculture. The Department of Agriculture has already made a ruling on these animals. You have no authority to modify that order, vacate that order. And the trial court simply denied the motion to reconsider the ruling. So in the defendant's motion for return of animals, it indicated that it wanted all animals that were impounded and seized. And today he again stated he was talking about horses for which she was found to have violated the Humane Care of Animals Act as well as the other animals. So I thought from the reply brief possibly there was a concession that this is not the proper place nor is there a proper place any longer to try and gain the ownership back of the horses that the Administrative Lodge disposed of. But it's not clear to me. It appears that they are seeking all of the animals back. No further questions. Thank you. Rebuttal, Mr. Morris. My statement by opposing counsel is clearly erroneous. We're not asking for all the animals back. We said it in our brief. We made it very clear and you still don't understand. We accept the Administrative Court order as to most of the horses and that only applied itself to I think it was 59 horses. Well, if you look at the exhibits, there's 69. So it only applies to most of the horses. But we didn't appeal that. We obviously will follow that. And you know they keep saying and they try to obfuscate the entire issue here. We want the return of the animals for which my client was not charged, the animals which my client was found not guilty and the animals that were not confiscated by the Department of Agriculture. That my client is entitled to. I just made the argument that there's a lawful seizure here of all the animals because my client argued in a previous appeal which was overturned in part as to the restitution issue that my client gave up ownership. My client nowhere in this record gave up ownership at any time. That's why I would argue the order which was drafted by my preceding counsel to protect the animals was drafted by him and then signed by the judge. That's a lawful order. It's still in effect and obviously it should still be followed. Before we can proceed any further to get any of these animals back, whether the cats, the ram, the sheep, any of the animals, we've got to get the order overturned. She says there's these implied things that were done. The order was never modified or changed as it requires it to be. So these secret conferences or what she alludes to that was done is not in the record. I know it wouldn't even act in the face of that until that order is modified and the court does something with the animals officially. It's one of the incidents that remain after the convictions were obtained. Thank you. Thank you, counsel. We take this matter under advisory.